HALL, Judge.
Ronald J. Pennison and his wife, Vera Tooley Pennison, were divorced by judgment of the Civil District Court rendered on June 1, 1962, and in the divorce decree Mrs. Pennison was awarded the permanent care, custody and control of the two minor children of the marriage, Ronald J. Penni-son Jr. and Janice Lynne Pennison.
On October 10, 1963 Mr. Pennison filed a rule against his divorced wife in which he sought to have the custody of the children taken from her and awarded to him on the ground that “events transpiring” since the divorce decree “conclusively established that the said Vera Tooley Penni-son is wholly and totally unfit to have the custody of said children by reason of character defects, lack of true interest in the children and otherwise * * The only allegations of fact contained in the rule are (1) that Mrs. Pennison has permitted the boy to roam the streets and playgrounds unattended, and that the boy suffered a broken arm while at a playground unattended; (2) that her supervision and attention to the boy has been so inadequate that he was failing in school and (3) that she has neglected the moral and spiritual development of the children, particularly Ronald Jr.
Following trial of the rule, the District Judge rendered judgment in which he:
1. “Denied” (dismissed) the rule, and
2. Ex-proprio motu decreed “that the visitation rights heretofore granted to the father, Ronald J. Pennison, with the minor child, Ronald J. Pennison Jr., be and it (sic) is hereby recalled and rescinded,” and
3.Enjoined the father “from in anyway interferring with his wife’s custody of the said minor, Ronald J. Pennison Jr.”
Mr. Pennison, the plaintiff in rule, ap--pealed.
The only proof adduced by plaintiff in rule was that Ronald Jr. at one time cracked a bone in his wrist while playing at a playground; and that he is receiving failing grades in school.
The only thing disclosed by the record with reference to the wrist injury is that the incident happened at the Stallings playground. This playground is only four blocks from Mrs. Pennison’s residence and play there is supervised by representatives of the New Orleans Recreational Department (NORD). Mrs. Pennison sometimes permitted Ronald Jr., then 11 years old, to walk unattended the four blocks to the playground during daylight hours. Whenever there were night baseball games at the playground she usually accompanied him. Ronald Jr. was a member of one of the NORD baseball teams.
This is a far cry from proof that Mrs. Pennison permitted the boy “to roam the streets and playgrounds unattended.”
With reference to Ronald’s failing school grades the record reveals that shortly after Mrs. Pennison was awarded custody of the children she took Ronald Jr. out of Holy Name of Mary School, where he had just completed the first half of the fifth grade, and enrolled him in St. Leo the Great School. Ronald Jr. had been making good grades at Holy Name of Mary School but after the transfer his grades began to drop. He failed to pass the sixth grade and had to repeat it. His report cards in the sixth grade reveal that he “does not do required work at school,” “does not do home work,’’ “appears not to try,” “is inattentive in class,” “wastes time,” and “annoys others.”
However there is nothing in the record upon which to base a conclusion that Ronald’s poor school grades were due to *235 any lack of interest in the child’s welfare or any inattention, lack of supervision, or other fault on the part of Mrs. Pennison. On the contrary the record shows that she was constantly in touch with the school authorities, co-operated fully with them, helped Ronald Jr. with his home work, disciplined him on occasion, and in general made every effort to assist him in bettering his grades. Whether St. Leo the Great was a more difficult school than Holy Name of Mary School, as suggested by counsel, or whether Ronald Jr. simply refused to put forth enough effort, is not known. Suffice it to say there is nothing in the record pointing to fault on the part of Mrs. Penni-son.
The record is devoid of any proof that Mrs. Pennison “has neglected the moral and spiritual development of the children, particularly Ronald Jr.” The record shows that Ronald Jr. tends to his religious duties and attends mass every Sunday.
There is scarcely any mention at all of the other child, Janice Lynne Pennison (aged 6) in the entire record.
The judgment appealed from, insofar as it dismissed Ronald J. Pennison’s rule for custody is manifestly correct.
However the Trial Judge went completely outside of and beyond the record when he undertook ex proprio motu to recall and rescind his prior judgment granting visitation rights to Mr. Pennison; and when he undertook to enjoin Mr. Pennison from interfering with his divorced wife’s custody of the boy.
Neither of these two issues were presented to the Court by the pleadings, and neither of them were even suggested to the Court by counsel during the trial or otherwise. Moreover, there is absolutely no proof in the record before us which sustains this part of the judgment.
For the foregoing reasons the judgment appealed from is affirmed insofar as it “denied” (dismissed) the rule for custody filed by Ronald J. Pennison. The judgment appealed from is set aside and annulled insofar as it recalled and rescinded the visitation rights theretofore granted to Ronald J. Pennison, and insofar as it enjoined and restrained him from interfering with Mrs. Pennison’s custody of the children,, without prejudice however to any future consideration of these issues if properly presented. Costs of both Courts shall be borne by appellant.
Judgment affirmed in part; judgment annulled in part.